UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SUSAN JANE CATRON, | ) |
| Plaintiff, | ) No. CV-12-3008-CI |
| v. | ) ORDER GRANTING PLAINTIFF'S |
| | ) MOTION FOR SUMMARY JUDGMENT |
| CAROLYN W. COLVIN, Commissioner of Social Security,[1] | ) AND REMANDING FOR ADDITIONAL |
| | ) PROCEEDINGS |
| Defendant. | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment. ECF No. 18, 23. Attorney Cory J. Brandt represents Susan Jane Catron (Plaintiff); Special Assistant United States Nancy A. Mishalanie represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 13. After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **REMANDS** for additional proceedings.

## JURISDICTION

On January 9, 2007, Plaintiff protectively filed a Title II

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to FED. R. CIV. P. 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

application for a period of disability and disability insurance benefits, alleging disability beginning October 21, 2005. Tr. 12; 135. In her application for benefits, Plaintiff reported that she stopped working due to PTSD, anxiety, paranoia, and memory loss. Tr. 139. Her claim was denied initially and on reconsideration, and Plaintiff requested an administrative hearing. Tr. 55-114. A video hearing was held on April 16, 2010, with Plaintiff appearing in Yakima, Washington, and ALJ Kim D. Parrish presiding in Oklahoma City, Oklahoma. Tr. 12; 28. At the hearing, medical expert Sandra K. Saffran, Ph.D., ARNP, vocational expert Scott Witmer, and Plaintiff, who was represented by counsel, testified. Tr. 28-54. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the administrative hearing, Plaintiff was 47 years old and living with her mother. Tr. 31-32. She finished high school and attended college for one year. Tr. 31. Plaintiff has three adult children. Tr. 36. Her past work includes sales route driver, and administrative clerk. Tr. 50.

Plaintiff's mother does all the grocery shopping, food preparation, and managing of Plaintiff's finances. Tr. 45. Plaintiff testified that her usual day is spent sitting in the living room visiting with her mother or other family members, and sitting on the porch. Tr. 36. She described her hobbies as playing with her grandchildren when they visit her mother's home. Tr. 41. Plaintiff said she suffers from frequent nightmares and panic

attacks, and all the time she feels "anxious, shaky, scared to death." Tr. 42. When the ALJ asked Plaintiff what would happen if she were to get in a vehicle and drive to a workplace, Plaintiff responded, "I would shake and tremble and be confused and afraid I would die. And my mind just goes and I can't stop it and I just have to run home." Tr. 33.

Plaintiff's treating psychiatric nurse practitioner and clinical psychologist Sandra K. Saffran, Ph.D., ARNP, testified at the hearing. Tr. 43-50. Dr. Saffran[2] has treated Plaintiff since October, 2005, and diagnosed Plaintiff with Post Traumatic Stress Syndrome, Provisional Bipolar Disorder II with psychotic features, Provisional Obsessive Compulsive Disorder, Depression NOS, and General Anxiety Disorder, Alcohol Dependence - full remission. Tr. 43; 283. Dr. Saffran testified that Plaintiff spends her days hyper-vigilant, where she is in a constant state of fight or flight. Tr. 44. Dr. Saffran also explained that Plaintiff's lack of insurance limits the medications she can prescribe for Plaintiff due to cost. Tr. 44; 48. Dr. Saffran noted that Plaintiff is not eligible for assistance with paying for her prescriptions, and obtaining the proper medication was a necessary element to returning Plaintiff to work: "I believe with the right medication, frequent counseling, the support that she has in her family, that [would] at

---

[2]The ALJ's repeated reference to "Ms. Saffran" is inappropriate. Regardless of the ALJ's beliefs about whether Dr. Saffran maintained a license with the State, she earned a doctorate degree and thus should be addressed with the proper honorific "Doctor."

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

some point and time ... get her back to being a functional person and to ... be able to work again." Tr. 48.

### ADMINISTRATIVE DECISION

At step one, ALJ Parrish found Plaintiff had not engaged in substantial gainful activity since October 21, 2005, the alleged onset date. Tr. 14. At step two, he found Plaintiff had the following severe impairments: anxiety disorder; personality disorder; and, history of alcohol abuse, in sustained remission. Tr. 14. At step three, the ALJ determined Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1(20 C.F.R. 416.920(d), 416.925 and 416.926). Tr. 14. The ALJ found Plaintiff has the Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: "[T]he claimant requires work in relative isolation with limited contact with peers, supervisors, and the general public. The claimant is able to sustain concentration necessary for unskilled work." Tr. 16.

In step four findings, the ALJ found Plaintiff's statements regarding pain and limitations were not credible to the extent they were inconsistent with the RFC findings. Tr. 20. The ALJ found that Plaintiff could not perform her past relevant work. Tr. 21. After considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded jobs exist in significant numbers in the national economy that the Plaintiff can perform, such as weight tester, linen grader, and wrapper. Tr. 22.

### STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ISSUES**

Plaintiff contends that the ALJ erred by: (1) finding her testimony was not credible; (2) improperly rejecting the opinions of Plaintiff's treating and examining medical providers; (3) improperly rejecting lay witness testimony; and (4) failing to meet his step five burden. ECF No. 19 at 2.

**A.   Credibility**

Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons for rejecting her subjective complaints. ECF No. 19 at 15. For the ALJ to reject the claimant's

complaints, he must provide "specific, cogent reasons for the disbelief." *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990); *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir. 1991); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986)("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless affirmative evidence exists establishing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988).

In this case, the ALJ did not make an express finding regarding whether Plaintiff was malingering.[3] However, the ALJ found that Plaintiff was not credible and provided the following explanation:

> While the claimant complains of severe symptoms, it does not seem reasonable to conclude from the minimal findings

---

[3] The ALJ noted the record contains a report from examiner Jay M. Toews, Ed.D., who opined that despite Plaintiff's performance on the objective medical tests, Plaintiff "did not appear to give maximal effort," and "her scores appeared to reflect conscious deception, distortion, and/or malingering." Tr. 18; 150.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

1  in evidence that such could be the basis for the degree
2  alleged [sic]. She does not appear to be experiencing
   progressive physical deterioration which might be expected
3  when there are intense and continuous symptoms. Likewise,
   the claimant's routine does not appear restricted by her
4  alleged disability; but, rather by choice. The severity
   of the claimant's symptoms does not appear to be of the
5  frequency and duration to be disabling.

6  Tr. 20.

7  While it is not clear from the ALJ's wording, it appears the
8  ALJ's first reason for discounting credibility is that the evidence
9  reveals "minimal findings" that do not support the degree of
10 impairment that Plaintiff alleges. As stated earlier, once the
11 claimant produces objective medical evidence of an underlying
12 impairment, an ALJ may not reject a claimant's subjective complaints
13 based solely on a lack of objective medical evidence to fully
14 corroborate the alleged severity of pain. *Cotton*, 799 F.2d at 1407;
15 SSR 96-7p. In this case, the ALJ provided two additional reasons for
16 discrediting Plaintiff's testimony, but as discussed below, neither
17 reason was valid.

18 The ALJ's second reason for discounting credibility is that
19 Plaintiff "does not appear to be" physically deteriorating. Tr. 20.
20 As Plaintiff points out, the ALJ's reasoning is vague, and he fails
21 to identify supporting evidence in the record. ECF No. 19 at 15-16.
22 Additionally, as Plaintiff also pointed out, the ALJ failed to
23 provide rationale that explains how physical deterioration
24 establishes the existence of mental disabilities. ECF No. 19 at 16.
25 A review of the record reveals no evidence or authority that
26 supports the ALJ's reasoning. Thus, this reason is not supported by
27 substantial evidence.

28 The ALJ's final reason for discounting Plaintiff's credibility

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

is that Plaintiff's "routine does not appear restricted by her alleged disability; but, rather by choice." Tr. 20. Again, the ALJ fails to provide the necessary specific analysis with citation to the record to support his conclusion, and thus this reason is legally insufficient. Moreover, the record does not indicate Plaintiff's limitations related to her ability to leave her home are simply a willing choice. Instead, the evidence reveals opinions of Dr. Saffran and lay witnesses that explicitly contradict the ALJ's conclusion. See, e.g., Tr. 44; 46; 209-45; 283-89. In the absence of supporting substantial evidence, the ALJ's third reason for discounting Plaintiff's credibility is legally insufficient.

When the court finds one or more of an ALJ's reasons supporting an adverse credibility finding invalid, the court determines whether the ALJ's reliance on such reasons was harmless error. See *Batson*, 359 F.3d at 1195-97 (applying harmless error standard where one of the ALJ's several reasons supporting an adverse credibility finding was held invalid). In this case, however, the ALJ failed to provide a single specific, valid reason for discounting Plaintiff's credibility. As a result, the errors in the credibility analysis are not harmless, and require remand for a proper evaluation of Plaintiff's credibility.

**B.   Medical Opinions**

Plaintiff contends that the ALJ erred by rejecting the opinions of Sandra Saffran, Ph.D., ARNP. ECF No. 19 at 4-15. The ALJ concluded that because Dr. Saffran does not have a current license to practice psychology, she is not an "acceptable medical source." Tr. 20. The ALJ declared that "only acceptable medical sources can be entitled to controlling weight," and, thus, Dr. Saffran's opinion

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

was "given some consideration, but not great or controlling weight." Tr. 20. Assuming, without deciding, that Dr. Saffran is properly considered an "other source" under the SSA regulations, the ALJ's reasoning applied to weighing her opinion is legally incorrect. In certain circumstances, an unacceptable medical source opinion is entitled to greater weight than the accepted medical source opinion:

> [D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

SSR 06-3p. The ALJ failed to understand that Dr. Saffran's opinion was entitled to greater weight than the opinion of one-time examining physician Jay M. Toews, Ed.D., if Dr. Saffran saw Plaintiff more often than Dr. Toews, and if through her notes, letter and hearing testimony, she provided better supporting evidence and explanation of her opinion. Because the ALJ misapprehended the law related to unacceptable medical sources, remand is required for the ALJ to reconsider and provide a legally sufficient analysis of the medical opinion evidence.

**C.    Lay witness testimony**

The Plaintiff contends that the ALJ erred by rejecting the lay witness opinions. ECF No. 19 at 17. Disregard of the testimony of friends and family members in an SSA disability proceeding violates 20 C.F.R. § 404.1513(e)(2)(1991). *Sprague*, 812 F.2d at 1232; *Dodrill*, 12 F.3d at 918. The ALJ must consider observations by nonmedical sources about how impairments affect a claimant's ability

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

to work. See 20 C.F.R. § 404.1513(e)(2). Specifically, the ALJ is required to consider lay witness evidence in cases where a claimant alleges pain or other symptoms that are not supported by medical evidence in the file, the ALJ "shall obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to . . . third parties who would be likely to have such knowledge." SSR 88-13. An ALJ is required to give "full consideration" to such evidence. *Id.* The ALJ can reject the testimony of lay witnesses only by providing reasons "germane" to each witness whose testimony is rejected. *Dodrill*, 12 F.3d at 919.

The ALJ rejected the lay opinions in this case for three reasons: (1) the family members "are not medically trained to make exacting observations" related to Plaintiff's symptoms and therefore "the accuracy of the statements is questionable"; (2) the lay witnesses are family members and therefore they are not "disinterested third parties"; and (3) the statements "are simply not consistent with the preponderance of the evidence." Tr. 21.

**1. Lack of medical training**

The first reason the ALJ gave for rejecting the lay testimony was that the witnesses lacked medical training: "Since these family members are not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the statements is questionable." Tr. 21.

The ALJ's disregard of the lay testimony because the witnesses lack medical training violates the regulation requiring an ALJ to consider observations by non-medical sources. *Sprague*, 812 F.2d at

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

1232 (citing 20 C.F.R. § 404.1513(e)(2)); *see also Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (recognizing that lay witnesses are of "particular value" because they can testify to claimant's everyday activities).  In offering the reports, Plaintiff's two sisters and mother were not attempting to present expert opinion or medical findings as to the extent of Plaintiff's disability or her ability to work.  Instead, the lay witnesses were reporting their own respective observations of Plaintiff's limitations. The value of this type of lay testimony, particularly that of family members, is well established.  *See Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (ALJ must consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by medical records). The ALJ's reliance upon this reason for rejecting the lay witness testimony was error.

    **2.    Family members**

The second reason the ALJ gave for rejecting the testimony of Plaintiff's family members was that the testimony was from "family witnesses" who were essentially biased.  Tr. 21.  This reasoning constitutes a "wholesale dismissal of the testimony of all the witnesses as a group and therefore does not qualify as a reason germane to each individual who testified." *Smolen*, 80 F.3d at 1289. "The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony." *Id.*  Testimony from lay witnesses who see the claimant daily is of particular value, and such lay witnesses will often be family members. *Id; see Dodrill*, 12 F.3d at 919.  It was error for the ALJ to dismiss the lay testimony because the witnesses were family members.

    **3.    Inconsistent with preponderance of the evidence**

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

The final reason the ALJ gave for rejecting the lay testimony was the lay witness statements "are simply not consistent with the preponderance of the evidence in this case." Tr. 21. If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons "that are germane to each witness." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (ALJ disregarding lay witness testimony must provide germane and specific reasons for each witness). Further, the germane reasons must be specific. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)("the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony"). In this case, the ALJ's general reference to the lay testimony as "not consistent with the preponderance of the evidence" is too vague to constitute even a "germane" reason for discounting the statements and comments of plaintiff's lay witnesses in light of the details the witnesses provided related to Plaintiff's symptoms and functioning. The ALJ is directed on remand to reevaluate the lay witness testimony using proper factors.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. The ALJ's reasons for discrediting Plaintiff's subjective symptom testimony, the medical source opinions, and the lay testimony were legally insufficient. On remand, the ALJ shall evaluate and explain the weight given to the opinions of the medical sources and lay witnesses, and, if necessary, provide legally sufficient reasons for rejecting the opinions. Additionally, the ALJ will evaluate Plaintiff's

credibility and specifically identify the testimony, if any, that is not credible or that undermines Plaintiff's subjective complaints. Finally, the ALJ will reevaluate his determination at step four and if necessary, make new step five findings. The decision is therefore **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 18,** is **GRANTED** and the matter is **REMANDED** to the Commissioner for additional proceedings.

2. Defendant's Motion for Summary Judgment, **ECF No. 23**, is **DENIED;**

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff, and the file shall be **CLOSED.**

DATED July 26, 2013.

                    S/ CYNTHIA IMBROGNO
                UNITED STATES MAGISTRATE JUDGE